**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

IMPERIAL PARK, LLC and RERUN )
of TENNESSEE, LLC, )
 )
  Plaintiffs, )
 )
v. ) **Case No. 3:14-cv-609**
 ) **Judge Aleta A. Trauger**
PENN-STAR INSURANCE COMPANY and )
GLOBAL INDEMNITY GROUP, INC., )
 )
  Defendants. )

## MEMORANDUM

Pending before the court is a Motion to Exclude Plaintiffs' Experts/Preclude Plaintiffs From Presenting Expert Testimony At Trial filed by the defendants (Docket No. 74), to which the plaintiffs have filed a Response in opposition (Docket No. 79). For the reasons discussed herein, the Motion will be denied.

## BACKGROUND

The plaintiff Imperial Park, LLC ("Imperial Park") is the insured owner of a property located in Smyrna, Tennessee that was damaged by a windstorm in June of 2011 (the "Property"). The plaintiff ReRun of Tennessee, LLC ("ReRun") is a business that occupied the Property at the time of the storm. The defendants Penn-Star Insurance Company ("Penn-Star") and Global Indemnity Group, Inc. ("Global") are the insurers of the Property.[1] The claims in

---

[1] There are disputes of fact regarding the relationship between Penn-Star, which is the named insurer on the policy, and Global, including whether Global is ultimately a party to the insurance policy at issue, but those questions will be resolved at trial and do not impact this motion.

this action are for breach of contract and bad faith in the defendants' handling of the plaintiffs' insurance claim that arose from the damage to the Property. A more complete discussion of the facts giving rise to this action and the individuals involved can be found in the court's September 24, 2015 Memorandum on the parties' cross-motions for summary judgment[2] (the "Summary Judgment Memorandum" (Docket No. 63)), familiarity with which is presumed.

For purposes of this motion, the court briefly recounts the identities of some of the individuals who were involved in the events giving rise to this action and have been named as proposed trial witnesses by the plaintiffs.[3] First, the plaintiffs (Imperial Park and ReRun) are both co-owned by husband and wife John Lenahan and Kathy Luna. Mac Finley is an assistant to Mr. Lenahan at ReRun and participated in meetings and correspondence with the defendants regarding the adjustment of the claim. Imperial Park's insurance policy on the Property was purchased from the defendants through insurance broker Bud Zander of Zander Insurance, and the plaintiffs reported the damage to the Property to Mr. Zander immediately following the storm in June of 2011. Robert Massaro is a Senior Claims Examiner for Penn-Star, who oversaw the handling of the plaintiffs' claim on behalf of the defendants. Kate Wilkinson is an agent of the defendants who also had a role in the handling of the plaintiffs' insurance claim.[4]

_____

[2] On May 29, 2015, the defendants filed Motions for Complete and Partial Summary Judgment. (Docket No. 31.) On June 5, 2015, with leave of court, Imperial Park filed a Motion for Partial Summary Judgment. (Docket No. 33.)

[3] The information about these individuals that is contained in the remainder of this section is drawn from the Summary Judgment Memorandum (Docket No. 63).

[4] Ms. Wilkinson's position is not entirely clear from the record. She has asserted that she is the Director of Property Claims for Penn-Star (See Docket No. 48-3 (Supplemental Affidavit of Kate Wilkinson)) and has also testified in her deposition – as discussed in more detail in the Summary Judgment Memorandum – that she works for Global. (See Docket No. 63 at p. 35).

When the plaintiffs' insurance claim for the storm damage was first submitted to the defendants in June of 2011, the defendants retained Jim Crofts of Tenco Services as an independent adjuster for the claim. Very early on in the claim adjustment process, Mr. Crofts retained Jeffrey Coyne of Donan Engineering ("Donan") to assist with evaluating the scope of the damage to the Property. The Donan report, which was shared with the defendants in July of 2011, indicated that a structural engineer was needed to fully evaluate the damage (it appears from the record that Donan was not a structural engineering firm). As a consequence, and with the defendants' permission, Mr. Crofts then authorized Donan to retain a structural engineer. In turn, Donan contacted EMC Structural Engineers, P.C. ("EMC"), and, in August of 2011, EMC prepared a proposal for completing the structural engineering evaluation that was shared with the defendants. It appears from the record, however, that Donan never retained EMC to complete the work and EMC never prepared a formal structural engineering report.

Mr. Crofts also retained local contractor Rob West of Fresh Start Restoration ("Fresh Start") to prepare an estimate for the cost of repairs based on the Donan report and the EMC proposal (which, again, was a proposal to prepare a structural engineering report, but not a final report). Fresh Start then prepared at least three cost estimates in August and September of 2011, which were shared with the defendants. The defendants forwarded, at least, the last of these estimates – for approximately $900,000 (Replacement Cost Value) – to the plaintiffs.[5]

---

[5] While the defendants do not take the position in this litigation that any of the Fresh Start estimates represent the proper value of the plaintiffs' insurance claim, it appears from the record that, at some point in time, the defendants relied on this approximately $900,000 estimate as a basis for calculating the amount of one or more of the checks they mailed to the plaintiffs. The defendants did, however, continue to adjust the claim thereafter.

Meanwhile, in June of 2011, Mr. Lenahan contacted structural engineer Wilburn Honeycutt of Honeycutt Engineering to assess the damage to the Property. Later, after receiving the approximately $900,000 Fresh Start estimate in September of 2011 (and becoming concerned that it was not based on a structural engineering report), Mr. Lenahan – with the knowledge of Mr. Crofts – asked Honeycutt Engineering to begin working on a structural engineering design plan for the Propery. From November of 2011 through the spring of 2012, Honeycutt Engineering worked on a structural engineering report, with drawings for the work to be done on the Property; this report was shared with the defendants in October of 2012. Mr. Crofts, with the defendants' knowledge, then sent that report to Fresh Start, which, in turn, then prepared a revised estimate (updated to account for the Honeycutt Engineering report as well as other developments), this time for $2.9 million.

Following the defendants' receipt of this estimate, in November of 2012, the defendants replaced Mr. Crofts by retaining a new independent adjuster to handle the plaintiffs' claim, Greg Martin. In December of 2012, Mr. Martin retained Douglas G. Peterson & Associates, Inc. ("D.G.P.A.") to perform an independent estimate of the damages. D.G.P.A., in turn, retained mechanical engineer Mike Reddington of the partnership MJR-Senter to prepare a report on the scope of work to be done on the Property. Early on, Mr. Reddington also prepared some estimates for the work to be done on the Property, based on his review of the Donan and Honeycutt Engineering reports as well as communications and prior work he had done with contractor Burch Corporation ("Burch") (though he did not obtain any work product from Burch related to the Property at that time). Mr. Martin and Mr. Reddington later solicited bids from independent contractors for the price of the work in Mr. Reddington's and D.G.P.A's scope of work report and received bids from Burch and Fresh Start, each close to $1.6 million.

Dissatisfied with these bids, Mr. Reddington then retained Jamey Watson, an estimator at the contracting firm of Robins & Morton, to prepare an estimate of the work to be done on the Property (despite indication that Robins & Morton would not actually be able to take on the job). Mr. Watson prepared more than one estimate between March and October of 2013, ranging between approximately $1.2 million and $2 million. It appears from the record that Mr. Watson was asked by Mr. Reddington to review the Honeycutt Engineering reports – at least in part – in the course of preparing at least one of these estimates. Mr. Martin, Mr. Reddington, and Mr. Watson have all been proffered as witnesses for the defendants, and a more thorough discussion of their proposed testimony (including which portions may be admitted at trial as expert testimony) can be found in the court's November 2, 2015 Memorandum on Imperial Park's Motion to Exclude the Expert Testimonies of Greg Martin, Michael Reddington, and Jamey Watson (the "Prior Expert Witness Opinion" (Docket No. 81)).

In the meantime, Imperial Park retained engineer Benton Garrison to prepare an estimate for the work to be done on the Property by using the reports from Honeycutt Engineering to determine the scope of work to be done and then obtaining bids from contractors who could perform the work. Mr. Garrison estimated the project at approximately $2.9 million, and Mr. Lenahan forwarded this estimate to Mr. Martin in May of 2013.

The defendants continued to adjust the claim through, at least, September of 2013, when the plaintiffs retained counsel to communicate with the defendants. This action was not commenced until January of 2014.

## RELEVANT PROCEDURAL HISTORY

On April 30, 2014, the court entered an Initial Case Management Order in this action which – in pertinent part – set the following deadlines: March 31, 2015 for the plaintiffs to

identify and disclose all expert witnesses and expert reports, June 20, 2015 for the defendants to

do the same, August 29, 2015 for the parties to depose all expert witnesses, and September 30,

2015 for the parties to file all dispositive motions (with partial motions for summary judgment

requiring a separate motion for leave of court). (Docket No. 14.) The Initial Case Management

Order did not expressly address the timing of rebuttal expert testimony. Also on April 30, 2014,

the case was set for trial on February 16, 2016. (Docket No. 15.)

On May 13, 2014, pursuant to the Initial Case Management Order, the plaintiffs provided

the defendants with their Rule 26 Initial Disclosures, naming the following individuals under

Federal Rule of Civil Procedure 26(a)(1)(A)(i):[6] Cathy Luna and John Lenahan, to would testify

about their contact with the defendants' agents, their activities in preparing the plaintiffs'

insurance claims, and the damages suffered by Imperial Park and ReRun; Bud Zander, as having

knowledge about his advising the plaintiffs of their duties under the insurance policy and his

assisting the plaintiffs in obtaining reports and other information; Rhonda LaVentura, Zander's

employee, with knowledge of the same topics as Mr. Zander; William Culbertson, the Smyrna

Fire Department Chief, who was present after the storm and discussed it with the plaintiffs; Steve

Dawson, of the Smyrna Codes Department, as having knowledge about replacement of a

building consistent with current codes; Wilburn Honeycutt and others from Honeycutt

Engineering, regarding their reports that were provided to the defendants; Tony Locke, as having

prepared a structural engineering evaluation that plaintiffs indicated had been provided to the

---

[6] Rule 26(a)(1)(A)(i) requires basic identification of "each individual likely to have discoverable
information . . . that the disclosing party may use to support its claims or defenses."

defendants;[7] Jeffrey Coyne, from Donan, as having prepared the Donan report; Jim Crofts; Rob

West and Stewart Bird from Fresh Start, as contractors retained by the defendants to prepare

bids;[8] Greg Martin, as the defendants' adjuster; Robert Massaro, as the defendants' claims

manager; Mike Reddington;[9] Clyde Walker of Burch Corporation;[10] Jamey Watson of Robins &

Morton, as a contractor retained by the defendants; Frank Padovich, State Environmental

Specialist; Mac Finley, as having knowledge of discussions on behalf of ReRun with the

defendants' agents, including Mr. Massaro; Benton Garrison, as the plaintiffs' engineering

consultant who prepared replacement cost estimates that were submitted to the defendants in

May of 2013; Tennessee Underwriters, Inc, and a number of individuals identified as sub-

---

[7] It is not entirely clear from the record what role, if any, Mr. Locke played in the events giving rise to this action or whether he was simply retained in the course of litigation. Nevertheless, it appears that the plaintiffs no longer intend to call him to testify (at least in any capacity that could be construed as expert testimony), as he is not listed in the plaintiffs' most recent communication to the defendants of record regarding the expert testimony they intend to offer at trial – the July 31, 2015 letter from plaintiffs' counsel to defense counsel (Docket No. 74-5 (Ex. D)), which is discussed in greater detail below.

[8] The Initial Disclosures name this entity as "Freshstart Company," but the real name appears to have been later clarified.

[9] In the Initial Disclosures, Mr. Reddington is listed as an engineer with "Douglas Peterson." As discussed above, it was later clarified that Mr. Reddington is actually a mechanical engineer of the two person firm M.J.R. Senter, who was retained by the defendants through intermediary D.G.P.A.

[10] In the Initial Disclosures, Mr. Walker is listed simply as a "contractor retained by Greg Martin," but it is clarified in the subsequent correspondence between the parties that Mr. Walker is a representative of Burch Corporation, whose role in this case is referenced above.

contractors and vendors involved in evaluating the damage to the Property, including James Barnham of EMC.[11]  (Docket No. 74-2 (Ex. A).)

Also on July 22, 2014, Imperial Park served its Response to Penn-Star's First Set of Interrogatories, which states: "At this time, the Plaintiff Imperial Park has not decided what expert witnesses it intends to call at trial.  Plaintiff reserves the right to call fact witnesses, who during the events of this lawsuit, prepared reports, etc., which are in the possession of the Defendant."  (Docket No. 74-3 (Ex. B) at p. 7.)  The Response also indicates that attached to it are exhibits outlining the chronology of events supporting Imperial Park's claims, citing to documents, and identifying participants.[12]  (*Id*. at p. 3.)  Also on July 22, 2014, ReRun served its Response to Penn-Star's First Set of Interrogatories.  (Docket No. 74-4 Ex. C).)  This Response references the exhibits attached to Imperial Park's Response, noted above, and indicates that these exhibits identify all persons with knowledge of ReRun's case as well.  (*Id*. at p. 2.)  This Response also states: "ReRun has not yet decided what expert(s) it intends to utilize at trial." (*Id*. at p. 5.)

On March 20, 2015, the court granted the parties' Joint Motion For Extension of Time for Several Deadlines of the Initial Case Management Order, which – among other things – moved the deadline for the plaintiffs' disclosure of expert witnesses and reports to May 29, 2015, moved the deadline for defendants' disclosure of expert witnesses to August 20, 2015, and moved the deadline for depositions of expert witnesses to October 30, 2015.  (Docket No. 21.)

---

[11] It is not clear from the record what role, if any, Tennessee Underwriters had in the events giving rise to this action.  This entity is not listed in the July 31, 2015 letter from plaintiffs' counsel to counsel for the defendants, outlining the expert testimony the plaintiffs intend to present at trial.

[12] These exhibits to Imperial Park's Response do not appear to be in the record.

The plaintiffs did not supplement their Initial Disclosures or discovery responses; nor did they provide the defendants with expert reports under Rule 26 prior to the May 29, 2015 deadline.

On July 31, 2015, Bob Lynch, counsel for the plaintiffs, wrote a letter to Michael Vetter, counsel for the defendants. (Docket No. 74-5 (Ex. D).) This letter indicates that Mr. Vetter had previously accused Mr. Lynch of violating the case management order by not timely disclosing expert testimony and that Mr. Vetter had, therefore, demanded that Mr. Lynch agree to continue the trial.[13] (*Id.* at p. 1.) The letter then goes on to assert that the plaintiffs' fact witnesses "who may be experts since they prepared reports, etc." were disclosed to the defendants through interrogatories and had been discussed throughout the discovery process. The letter then references an agreement between the parties to extend the deadlines in the case management order[14] and suggests that, because the defendants filed their summary judgment motions early, the plaintiffs need additional time to reflect on potential expert witnesses. (*Id.*) Finally, the letter provides an updated list of witnesses that the plaintiffs intend to call at trial and provides a summary of what they will testify to but states: "None of the above witnesses are experts pursuant to Rule 26(a)(2)(B) and I am not required to prepare a written report as required under the rule. Rather, these witnesses are at least witnesses under Rule 26(a)(2)(C), which only requires a written report from me concerning the subject matter on which the witnesses are expected to present evidence under the Federal Rules of Evidence and a summary of the facts

---

[13] This prior communication does not appear to be in the record, and it is not clear if it was a written communication or took place in the context of a telephone or in-person conversation.

[14] No agreement to extend the plaintiffs' expert disclosure deadline beyond May 29, 2015 appears in the record.

and opinions to which the witnesses are expected to testify. Please consider this letter to be that written report. However, I do reserve the right to amend or add additional testimony and/or documents after I have completed discovery. All of the information, oral and written, from which these witnesses will provide testimony have been available to the parties since the evidence was created or produced during discovery. There is no outside evidence from an outside expert, at least with respect to the Plaintiffs' case. Therefore, I do not see why we cannot complete all of our work by December 31, 2015. Accordingly, I would request that the case management order be extended for all trial preparations until December 31, 2015." (*Id*. at 5.)

The list identifies the following witnesses who are intended to offer expert testimony on behalf of the plaintiffs: 1) Mr. Honeycutt of Honeycutt Engineering (who, according to the letter, will testify only as to opinions contained in the the engineering reports he prepared in this case and which were provided to the defendants during the adjustment process and again during discovery); 2) Mr. Garrison (who, the letter notes, "was not hired to assist the Plaintiffs in litigation" and will testify only as to the report he prepared regarding the work to be done to the Property and the costs of such work, as shared with the defendants prior to the commencement of this action, in the course of adjusting the claim); 3) Jeff Coyne of Donan Engineering (who will testify as to the Donan Report and, specifically, "its recommendation that a structural engineer was needed to fully assess the damage to the building"); 4) Mr. West of Fresh Start (to testify as to the several estimates he prepared, including the $2.9 million estimate, and the fact that the scope of work prepared by Mr. Reddington was unrealistic, all opinions which the letter claims are contained in Mr. West's deposition testimony); 5) James Barnham of EMC (to testify about

the EMC proposal that was given to the defendants in the course of adjusting the claim);[15] 6) Ms. Luna (to corroborate Mr. West's estimate as to the damages to the Property in excess of $3.2 million, to testify as to the damages to the plaintiffs' businesses – as both the co-owner of the businesses and a Certified Public Accountant ("CPA") –, and to testify as to how ReRun has mitigated its damages by shifting its operations); and 7) John Lenahan (again to corroborate Mr. West's testimony and to testify as to the claims adjustment process, including putting together the $2.9 million loss estimate with Mr. Garrison, his willingness to begin work on the Property, and the damages to the plaintiffs' businesses).

The list also names some other witnesses, specifically noting that the plaintiffs do not actually consider them to be expert witnesses at all. These include: 1) Mac Finley (who will testify about conversations in which the parties agreed that ReRun would cease its operations in order to store items from the damaged portions of the Property while the adjusters evaluated the damage and prepared for construction); 2) Bud Zander (who will testify as to how he assisted Imperial Park in procuring an engineering report from the defendants); 3) Kate Wilkinson (whose testimony is not specified); and 4) Jim Crofts (who will testify as to his role in adjusting the claim). (*Id*. at 3-5.)

The list further includes Eric Eitzen (who works for Robins & Morton and whose testimony is not specified, as he has not yet been deposed) and Burch representatives Clyde Walker and Brian Houser (again with testimony unspecified, and who have not yet been

---

[15] The letter classifies Mr. Coyne, Mr. West, and Mr. Barnham as "agents" of the defendants, apparently alluding to the fact that they were retained by Mr. Crofts early on in the adjustment process, and asserts that their testimony, therefore, constitutes party admissions. Whether the statements of these witnesses will be admitted into evidence as admissions under Federal Rule of Evidence 801(d)(2) is for another day.

deposed.)  Finally, the list names defendants' agent Robert Massaro as well as two individuals who have been proffered to offer testimony on behalf of the defendants, Greg Martin and Michael Reddington.[16]  Mr. Martin's and Mr. Reddington's testimony in this matter is discussed in much greater detail in the Prior Expert Witness Opinion.  (Docket No. 81.)

On August 4, 2015, Mr. Vetter responded by letter to Mr. Lynch, indicating that he did not agree that Mr. Lynch's July 31, 2015 letter constitutes the required expert disclosures under Rule 26, because not only did the May 29, 2015 deadline for the plaintiffs' expert disclosures pass but also the July 31, 2015 letter did not meet the Rule 26 criteria.[17]  (Docket No. 74-8 (Ex. G).)  The letter specifically references that the plaintiffs have "several experts who it appears [they] intend to call to testify about their opinions as to engineering issues, values, construction cost/construction knowledge, accounting issues, and other areas of opinion/expertise."  (*Id*. at p. 3.)  The letter also mentions that Mr. Vetter had earlier requested that the plaintiffs agree to an extension for the deadline for the defendants' expert disclosures, along with other deadline extensions and a revised scheduling order, but that the plaintiffs had failed to respond.  (*Id*. at p. 1.)  The letter then indicates that the Burch representative depositions would be scheduled "when

---

[16] The letter also indicates that Mr. Lynch does not believe Mr. Martin is an expert under the Federal Rules and, indeed, the court held in the Prior Expert Witness Opinion that Mr. Martin may not provide expert testimony in this matter.  (See Docket No. 81 at p. 18.)  The letter also states that the plaintiffs believe that Mr. Reddington is an agent of the defendants.  Again, while this determination is for another day, Mr. Reddington does appear to be offering testimony in this case only to support the defendants and, therefore, cannot be construed as a plaintiffs' expert.

[17] It is not entirely clear from the letter whether Mr. Vetter takes the position that the plaintiffs were required to provide written expert reports for their proposed witnesses under Rule 26(a)(2)(B) or agrees that the plaintiffs were required simply to provide the subject matter of the testimony and summary of facts and opinions under Rule 26(a)(2)(C) but still believes the July 31, 2015 letter to be inadequate.

it was convenient to do so."  Finally, the letter notes that Mr. Vetter is working on his own expert

disclosures, pursuant to the August 20, 2015 deadline, but that the plaintiffs' "non-disclosure has

hampered [his] ability to respond to [their] disclosures and make some of [his] own"[18] and

offers: "if you wish to re-think pushing back some of the scheduling order deadlines and the trial

date, please let me know immediately and please send me a proposed revised scheduling order so

I can discuss it with my clients.  I will not agree to me making my expert disclosures and then

giving you additional time to make yours after I have done so."  (*Id*. at p. 4.)

On August 7, 2015, Mr. Lynch wrote back to Mr. Vetter, reiterating that none of the

plaintiffs' witnesses "were selected to give expert testimony as a witness, but rather they have

direct evidence that is relevant in this case."  (Docket Nos. 74-9 (Ex. H) at p. 1.)  This letter also

indicates the plaintiffs' position that the defendants are not prejudiced by the lack of expert

disclosures and specifically mentions that the defendants had already been provided with all of

the materials outlining the opinions of Mr. Honeycutt, which were exchanged in discovery.[19]

(*Id*. at p. 1.)  The letter also indicates that it attaches a copy of Benton Garrison's resume and

adds that Mr. Martin identified Mr. Garrison as having provided some of the bid information Mr.

Martin used in his adjustment of the claim.  (*Id*. at p. 2.)  Finally, the letter states: "I am confused

as to why you continually maintain that these witnesses are experts because the definition of

expert is one who will help the jury understand the evidence.  This information is not an aid to

the jury, but direct evidence about the events that occurred in this lawsuit.  However, if they are

---

[18] The letter specifies that these responses might include defendants' objections to some of the plaintiffs' witnesses under Rule 702.

[19] The Honeycutt engineering reports referenced in the letter appear to be contained in Docket No. 74-10 (Ex. H-1).  They include discussions of damage to the Property and recommendations on how to rebuild, including detailed drawings.

determined to be experts, you have their disclosures, which you have had all along."[20]  (*Id.*)  The letter also states that the defendants are not prejudiced by late disclosures of Mr. Benton and Mr. Garrison because not only did the defendants have their reports from the time the claim was being adjusted, but both of these witnesses were named in the complaint, the initial disclosures, and the summary judgment pleadings, and the defendants had over a year to depose Mr. Honeycutt and Mr. Garrison but had chosen not to.  (*Id.*)  Finally, the letter rejects the continuance of the trial.  (*Id.*)

On September 4, 2015, Imperial Park filed a Motion to Exclude the Expert Testimonies of Greg Martin, Michael Reddington, and Jamey Watson (Docket No. 59), to which the defendants filed a Response in opposition (Docket No. 62), and Imperial Park filed a Reply (Docket No. 66) along with the supporting Declaration of Benton Garrison (Docket No. 67). On September 29, 2015, with leave of court, the defendants filed a Response in Opposition to the Reply, seeking to exclude Imperial Park's Reply on procedural grounds and to exclude the supporting Declaration of Benton Garrison on the ground that he was not properly disclosed as an expert witness.  (Docket No. 72.)  The Prior Expert Witness Opinion, which granted in part and denied in part this motion, did not rely on the Declaration of Benton Garrison, and the court postponed the defendants' argument that Benton Garrison was not properly disclosed as an expert witness, which was to be addressed in the instant opinion.  (See Docket No. 81 at p. 9, n. 11.)

---

[20] The court notes that there appears to be some inconsistency in the plaintiffs' position, as expressed in the correspondence in the record, as to whether their witnesses (including Mr. Garrison and Mr. Honeycutt) will be proffering expert testimony that requires at least Rule 26(a)(2)(C) disclosures, or whether these witnesses will provide lay testimony only.

On September 16, 2015, Mr. Lynch sent another letter to Mr. Vetter, indicating that additional handwritten notes, call logs, and timesheets belonging to Mr. Honeycutt had been discovered and added to the "Discovery Dropbox" for defendants to access. (Docket No. 74-11 (Ex. I) at p.2.) The letter also states that Mr. Lynch was confused as to why the *defendants* did not disclose Mr. Honeycutt or Mr. Garrison as expert witnesses, because Mr. Watson's October 4, 2013 estimate is "based on" the Honeycutt engineering reports, and because Mr. Watson's estimates identify Mr. Garrison and Mr. Lenahan as having obtained many of the underlying subcontractor bids incorporated into Mr. Watson's final estimate. (*Id*. at p. 2.) The letter then goes on to indicate that it is attaching the Declaration of Benton Garrison under Rule 26(a)(2)(D)(ii),[21] with the intent that the plaintiffs will call him as an expert witness to rebut the proffered expert disclosures of Mr. Martin, Mr. Reddington, and Mr. Watson. (*Id*.) Specifically, the letter indicates that Mr. Garrison will opine on the differences between Robins & Morton's March 1, 2013 estimate and its final October 4, 2013 estimate that is the subject of Mr. Watson's expert opinion. (*Id*.) The letter states, however, that the plaintiffs do not concede that Mr. Garrison is a Rule 26(a)(2)(B) expert witness for whom a full disclosure is required, because he has not been retained as a paid litigation expert but, rather, is "an industrial engineer charged by Imperial Park with the construction of the replacement of the manufacturing facility" and that the notes of Mr. Garrison's activities on behalf of Imperial Park have been available to defendants through discovery from "the very beginning of this litigation." (*Id*.) The letter also states that Mr. Garrison did not authorize Mr. Watson to use his "professionally obtained bids and/or

---

[21] Rule 26(a)(2)(D)(ii) states that expert testimony "intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C)" must be disclosed "within 30 days after the other party's disclosure."

estimates in the Defendants' expert opinion concerning the replacement cost as of October 4, 2013." (*Id*.) Additionally, the letter indicates that it has attached a chart of Imperial Park's damages as of the date of trial and four charts, reflecting Re Run's damages as calculated by Ms. Luna from ReRun's tax returns (indicating that most of these returns had already been disclosed to the defendants and that the defendants had already deposed Ms. Luna about ReRun's damages and how they would be calculated, but also supplementing the 2014 tax return that had only recently become available). (*Id*. at p. 3.)[22]

Mr. Garrison's resume, attached to the September 16, 2015 letter, indicates that he has an educational background in industrial engineering and that he has worked as an industrial and contract engineer for more than 25 years, including work as a project manager for large construction projects. (Docket No. 74-11 (Ex. I). at p. 12-14.) Mr. Garrison's Declaration, also attached to the letter, states that he was retained by Mr. Lenahan in January of 2013 as a project manager/construction consultant to review the Honeycutt engineering report and obtain and evaluate estimates for replacing the damaged portions of the Property. (*Id*. at p. 6-7.) His Declaration also includes his opinions on the Fresh Start estimates from the fall of 2011, the scope of work report circulated by Mr. Reddington in his request for bids from contractors (specifically, Mr. Garrison opines that this scope of work report was inadequate and lacked necessary specifications), and the estimates from Robins & Morton (specifically, his opinion that these estimates were incomplete and inaccurate, as they were missing elements necessary to fully replace the damaged portions of the Property and they contained freezer panels and rack systems that were not approved by Imperial Park). (*Id*. at p. 7-9.) Finally, Mr. Garrison's Declaration

---

[22] These attachments do not appear to be in the record.

contains his opinion that that the total replacement cost for the damaged portions of the Property

is in excess of the insurance policy limit of $3.2 million. (*Id*. at p. 10.)

On October 2, 2015, the defendants filed the pending Motion to Exclude Plaintiffs'

Experts/Preclude Plaintiffs from Presenting Expert Testimony At Trial (Docket No. 74), for

failure to properly disclose any expert witnesses pursuant to the court's case management orders,

to which the plaintiffs filed a Response on October 12, 2015 (Docket No. 79).

Also on October 2, 2015, the plaintiffs filed a Motion for Extension of Time to Complete

Discovery and/or Produce Evidence for Trial, which specifically referenced extending until

December 31, 2015 the deadline for expert depositions as well as for the plaintiffs to depose Eric

Eitzen of Robins & Morton, Clyde Walker and Brian House of Burch Corporation, and – for

purposes of determining any punitive damages – the defendants' Presidents and CEOs. (Docket

No. 73.) On October 6, 2015, following a telephone conference with the parties, the court

entered an order granting the plaintiffs' motion with respect to all requests except for the

punitive damages deposition of the defendants' CEOs. (Docket No. 78.)

## LEGAL STANDARD

Under Federal Rule of Evidence 702, expert testimony is defined as follows:

A witness who is qualified as an expert by knowledge, skill, experience, training,
or education may testify in the form of an opinion or otherwise if: (a) the expert's
scientific, technical, or other specialized knowledge will help the trier of fact to
understand the evidence or to determine a fact in issue; (b) the testimony is based
on sufficient facts or data; (c) the testimony is the product of reliable principles
and methods; and (d) the expert has reliably applied the principles and methods to
the facts of the case.

In addition, lay testimony may contain certain types of opinions without expert designation: "If

the witness is not testifying as an expert, the witness' testimony in the form of opinions or

inferences is limited to those opinions or inferences which are (a) rationally based on the

perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701; *see also Harris v. J.B. Robinson Jewelers*, 627 F.3d 235, 240 (6th Cir. 2010) ("The modern trend among courts favors the admission of opinion testimony provided that it is well founded on personal knowledge and susceptible to specific cross-examination.") The Sixth Circuit has held that an opinion that is not based on knowledge beyond that of an ordinary juror or on reasoning beyond that familiar in everyday life may be admissible without expert designation. *U.S. v. White*, 492 F.3d 380, 401 (6th Cir. 2007) (upholding admission of lay opinion testimony by witnesses in a Medicare fraud case who directly participated in auditing the transactions at issue that certain "contracts contained a significant profit margin which rendered them unreasonable," without requiring expert designation, but holding that testimony about how the Medicare system works in general and what certain terms mean was expert testimony that required expert qualifications). The *White* opinion also stated that "[t]he distinction is far from clear in cases where . [.] . a witness with specialized or technical knowledge was also personally involved in the factual underpinnings of the case." *Id.* The opinion then explains that "the Federal Rules of Evidence distinguish between lay and expert *testimony*, not *witnesses*. One witness may properly offer lay testimony and, at the same time, may be precluded from putting forth expert testimony." *Id.* at 403 (emphases added) (internal citations omitted).

Under Rule 26(a)(2)(C), parties must provide expert witness disclosures, even for witnesses who are not retained or specially employed in the course of litigation; these disclosures include, at a minimum, "(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and

opinions to which the witness is expected to testify." With respect to expert witnesses who are retained or specially employed, the disclosure must be accompanied by "a written report prepared and signed by the witness" that includes the bases for the witness's opinions, facts relied on, and the witness's qualifications and prior expert testimony, among other specific itemized information. Fed. R. Civ. P. 26(a)(2)(B). Under Rule 26(a)(2)(D), the timing for initial expert disclosures is to be set by court orders; expert rebuttal testimony must then be disclosed within 30 days of the disclosure of the testimony it rebuts, absent a court order to the contrary.

"If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). A showing of harmlessness for this purpose requires "an honest mistake on the part of a party coupled with sufficient knowledge on the part of the other party." *Sommer v. Davis*, 317 F.3d 686, 692 (6th Cir. 2003) (citing *Vance v. United States*, 1999 WL 455435 at *5 (6th Cir. June 25, 1999)). Under Rule 37, the district court retains discretion to fashion a remedy for Rule 26 violations (*see Roberts ex rel. Johnson v. Galen of Va, Inc.*, 325 F.3d 776, 784 (6th Cir 2003))

## ANALYSIS

It is clear from the record that the plaintiffs have not retained any expert witnesses specifically for the purposes of litigation. It is also clear from the plaintiffs' Initial Disclosures and the subsequent communications between the parties about testimony to be offered by the plaintiffs at trial, however, that the plaintiffs intend to call witnesses with expertise in various areas of engineering and construction and that their testimony will contain at least some opinions based on this expertise that require expert designation and are subject to the Rule 702

requirements.[23]  Moreover, these opinions may be critical to assisting the jury in understanding the complicated issues in this trial, including the issues raised in the various reports prepared by these witnesses in the course of adjusting the plaintiffs' insurance claim.  Before reaching the primary question of whether such testimony should be precluded due to the plaintiffs' alleged failure to comply with Rule 26 requirements and the court's case management orders, the court first turns to the question of which portions of the plaintiffs' witnesses' proffered testimony are, in fact, expert opinions.

## I.    DISTINGUISHING PLAINTIFFS' EXPERT TESTIMONY

As discussed more fully in the Prior Expert Witness Opinion (Docket No. 81), which looked at the question of what qualifies as expert (versus lay) testimony with respect to three of the defendants' proffered witnesses, this can be a difficult question to answer where witnesses are providing a combination of lay and expert testimony.  It is clear that the plaintiffs' counsel's July 31, 2015 letter to counsel for the defendants, which purports to contain the plaintiffs' Rule 26(a)(2)(C) expert disclosures, is overly inclusive and references testimony that does not require expert disclosure or expert designation.  (Docket No. 74-5 (Ex. D).)  First, John Lenahan's testimony regarding what happened during the claims adjustment process, including his

---

[23] The court notes that, at this time, the defendants have not raised any challenges to the qualifications of these witnesses or to the reliability of the methodologies they used in forming their opinions and, therefore, the court will not conduct a complete analysis of the admissibility of these opinions under Rule 702.  Moreover, the court's instant opinion does not preclude the defendants from raising any such challenges prior to trial; nor does this opinion address any other potential grounds for excluding expert or lay testimony by the plaintiffs' witnesses that may be raised by motions *in limine* or by objections at trial.  This opinion addresses only the defendants' argument that certain proffered testimony by the plaintiffs should be excluded as expert testimony that was not properly disclosed pursuant to Rule 26 and the court's case management orders.

communications with the defendants and others involved in evaluating the damage to the Property and his retention of Benton Garrison, is all lay testimony,[24] as is his testimony regarding losses to the plaintiffs' businesses.[25]  Similarly, Ms. Luna may provide testimony on the same topics that is also lay testimony; despite the fact that Ms. Luna is a CPA, the record contains no indication that the plaintiffs intend to have her offer testimony to educate the jury on accounting principles or otherwise apply her expertise to clarify a factual dispute at issue related to accounting.  Rather, it appears that Ms. Luna will simply recount her personal knowledge of the businesses' financial condition and her lay opinions as to the businesses' losses that are based on her combined knowledge of accounting principles and the operations of the businesses, opinions that do not require expert designation.  Therefore, regardless of any statements the plaintiffs may have made to the contrary, Mr. Lenahan and Ms. Luna will not be providing expert testimony in this matter.

Next, as the plaintiffs' counsel acknowledges in his July 31, 2015, letter, Mr. Finley and Mr. Zander will be providing lay testimony only regarding communications they had with the

---

[24] To the extent that the plaintiffs have indicated that they would like Mr. Lenahan to corroborate some of the construction estimates or engineering reports at issue in this case, the court construes this to mean that he will offer testimony to corroborate when he received those materials, to whom he forwarded them, whether he provided certain information to the people who prepared them, and whether he relied on them in his negotiations with the defendants, all of which – again – is lay testimony.  There is no evidence in the record to indicate that Mr. Lenahan has any expertise in construction or engineering that would render him qualified to offer expert opinions regarding the accuracy or reasonableness of any engineering reports or construction bids, or their compliance with industry standards.  Therefore, the court does not construe the plaintiffs' disclosures to indicate that Mr. Lenahan will provide any expert opinions of this nature and notes that such opinions would likely be inadmissible under Rule 702.

[25] Some of this testimony may include lay opinion testimony under Rule 701, based on his personal knowledge of the businesses.

parties and other individuals involved in this case.  There is no way to construe the subject matter of this testimony to contain expert opinions.  The July 31, 2015 letter also names Ms. Wilkinson, Mr. Massaro, Mr. Martin, and Mr. Crofts, all of whom participated in the adjustment of the plaintiffs' claim on behalf of the defendants.  Their testimony regarding their activities in adjusting the claim is also entirely lay testimony, although it may include lay opinion testimony regarding their beliefs about the reasonableness of reports they received at the time they were adjusting the claim.  To the extent that Mr. Massaro, Ms. Wilkinson, Mr. Martin, and Mr. Crofts have qualifications or experience in the insurance industry, the court notes that – consistent with the Prior Expert Witness Opinion, particularly in its discussion of Mr. Martin (see Docket No. 81 at pp. 17-18) – no expert testimony based on insurance industry standards will be admitted in the case, as there is no indication that this type of expert testimony would be helpful to the jury, who are ultimately responsible for interpreting the insurance contract.  Moreover, Mr. Massaro and Ms. Wilkinson are agents of the defendants, and there is no indication that they are in any way providing testimony, lay or otherwise, on behalf of the plaintiffs.  And Mr. Martin is providing lay testimony on behalf of the defendants only, as discussed more fully in the Prior Expert Witness Opinion.  Similarly, the July 31, 2015 letter also names Mr. Reddington, who will be providing lay and expert opinion testimony on behalf of the defendants, and Mr. Eitzen,[26] who works for Robins & Morton alongside Jamey Watson (who is also providing lay and expert testimony on behalf of the defendants).  These witnesses do not qualify as plaintiffs' experts, for

---

[26] While Mr. Eitzen has not yet been deposed, it appears from the record that the plaintiffs wish to depose him about the same subject matter and opinions contained in the Robins & Morton report that will be the basis of Mr. Watson's expert testimony.  There is no indication in the record that Mr. Eitzen holds opinions counter to Mr. Watson's, which the plaintiffs intend to put forth on their own behalf.

purposes of Rule 26 disclosures or otherwise, simply by virtue of the fact that the plaintiffs will elicit cross-examination testimony from them regarding their expert opinions on behalf of the defendants. Accordingly, none of the witnesses listed in this paragraph will be providing expert testimony on behalf of the plaintiffs.

With respect to Mr. Walker and Mr. Houser of Burch Corporation, whom the plaintiffs have not yet deposed, there is insufficient information in the record regarding how the plaintiffs intend to use this testimony. Certainly, these witnesses may provide lay testimony about their preparation of bids in this case. It does not appear, however, that their bids were in line with the position taken by the plaintiffs and, therefore, it does not appear that their work product contains expert opinions to support the plaintiffs' case but, rather – like with Mr. Reddington and Mr. Eitzen – the plaintiffs would be cross-examining them on the opinions contained in their bids. Accordingly, they, too, will not provide expert testimony for the plaintiffs at trial.[27]

Finally, the court finds that the proposed testimony of the following individuals does contain expert opinions on behalf of the plaintiffs that the plaintiffs intend to put forth at trial: Mr. Garrison, Mr. Honeycutt, Mr. West, Mr. Coyne, and Mr. Barnham.[28] Specifically, it appears that the plaintiffs intend to have these witnesses provide the opinions that are contained in their

---

[27] In the event that these witnesses may have other opinions that would support the plaintiffs, however, it would clearly be too late for the plaintiffs to introduce those opinions for use as expert testimony at this stage in the case, where there has been nothing about any such opinions disclosed in the record to date.

[28] The defendants argue in their briefing that they are prejudiced by the large volume of expert witnesses now proffered by the plaintiffs, citing the lengthy list of witnesses contained in the July 31, 2015 letter. As indicated herein, however, it is only five of these witnesses whose proposed testimony actually contains what the court finds to be expert testimony. Moreover, as noted below, the plaintiffs will be precluded from offering any additional expert testimony beyond what has already been disclosed and identified in this opinion.

reports prepared in this matter (Mr. Garrison's scope of work and compiled estimate for work to be done on the Property, the Honeycutt Engineering report and attached drawings and materials, the Fresh Start bids including the bid for $2.9 million that was based on the Honeycutt Engineering report, the Donan report that indicated the need for a structural engineer to participate in the determination of the scope of work on the Property, and the EMC proposal for performing the structural engineering work) as well as any opinions necessary to explain to the jury how these reports were prepared. With respect to Mr. Garrison, the plaintiffs also intend to have him provide testimony specifically rebutting the expert opinions provided by Mr. Reddington and Mr. Watson regarding their work product. [29] The plaintiffs have not indicated that any of these witnesses, other than Mr. Garrison, will be providing rebuttal testimony or otherwise offering opinions about work product aside from their own. [30] The court notes that these witnesses will also clearly be providing lay testimony regarding the actual events that took place and the communications they had during the time they were participating in the claim adjustment process. While not before the court at this time (see supra n. 25), the court also notes

---

[29] The Garrison Declaration indicates that Mr. Garrison will also testify regarding whether the scope of work should include replacement of the original types of storage racks and freezer panels that were in the building prior to the storm or if those items should be replaced with more up-to-date materials. As indicated in the Prior Expert Witness Opinion (Docket No. 81 at p. 21), this testimony contains both admissible lay testimony regarding what the parties agreed to and inadmissible opinion testimony about what was required by the insurance contract.

[30] The court notes that the plaintiffs have indicated that Mr. West will testify that Mr. Reddington's scope of work report was unrealistic. Mr. West, however, is not an engineer like Mr. Reddington but, rather, is a contractor who worked on preparing estimates, at least one of which was intended to be based on Mr. Reddington's report. His opinion regarding Mr. Reddington's report, therefore, is not an evaluation of Mr. Reddington's report from an engineering perspective but an explanation of how he perceived Mr. Reddington's report when he was working with it to put together his estimate. This is lay opinion testimony that will be part of Mr. West's recounting of his process of putting his bids together.

that – in keeping with the Prior Expert Witness Opinion – these witnesses will not be permitted to offer expert testimony that is outside of their respective fields of expertise, including opinions about how to interpret the insurance contract that is at the heart of this action.

## II.     Rule 26 Violations

The court now turns to the question of whether the plaintiffs' expert testimony identified above is admissible or, as the defendants argue, should be excluded due to the plaintiffs' failure to timely disclose these opinions in violation of Rule 26 and the court's case management orders.[31]

As an initial matter, the court finds that, because these witnesses were not retained in the course of litigation, the plaintiffs were only required to provide disclosures under Rule 26(a)(2)(C).[32]  Nevertheless, the plaintiffs clearly violated Rule 26 and the court's orders by not providing these disclosures prior to May 29, 2015.  Despite references by the plaintiffs to agreements between the parties, there is absolutely nothing in the record that constitutes an

---

[31] The court notes that, while the defendants' motion is styled as a motion to preclude all expert testimony on behalf of the plaintiffs, the defendants only explicitly reference the testimony of Mr. Garrison, Mr. Honeycutt, and Ms. Luna (who, as indicated above, will not actually be providing expert testimony in this matter.)  Nevertheless, the court construes the motion as one to exclude all of the plaintiffs' expert testimony, which for the reasons explained herein, is limited to those expert opinions from the July 31, 2015 letter identified above.

[32] The court notes that the defendants similarly intend to provide expert testimony from witnesses who were involved in the underlying events giving rise to this action and who were not specifically retained in the course of litigation (Mr. Reddington and Mr. Watson), yet the defendants chose to provide more complete disclosures under Rule 26(a)(2)(B).

agreement between the parties, let alone a court order, to extend the deadline for the plaintiffs' expert disclosures beyond May 29, 2015.[33]

Nevertheless, the court finds this violation to be harmless and, therefore, will not exclude the plaintiffs' expert testimony on this ground.[34] First, there appears to be some confusion by all the parties in this action as to what qualifies as expert testimony. Next, it appears that there was at least some misunderstanding regarding the agreements between the parties, as there were

---

[33] The plaintiffs' briefing references their Motion For Extension of Time to Complete Discovery and/or Produce Evidence For Trial (Docket No. 73), which the court subsequently granted (Docket No. 78). This motion (and the corresponding order), however, address only the extension of time for certain depositions and does not at all implicate the deadlines for expert disclosures, which had already long since passed at the time this motion was filed. The plaintiffs also mention a "gentleman's agreement" with the defendants reached in July 2015 but, again, there is no documentation in the record to confirm any such agreement and, anyway, July of 2015 was already past the point in time when the plaintiffs' expert disclosures were due. Nevertheless, the court accepts that there may have been some confusion between the parties as to whether there would be an agreement reached regarding the plaintiffs' expert disclosures. The court will not address in this opinion any of the allegations in the record regarding the parties' negotiations around continuing the trial or extending other deadlines aside from the deadlines for the plaintiffs' expert disclosures. Moreover, the court is not swayed in this opinion by allegations that the plaintiffs have not cooperated with the defendants' requests in this regard. If the defendants were dissatisfied with their negotiations with the plaintiffs, they were free to move the court for any extensions they deemed necessary.

[34] In addition to arguing that the plaintiffs' Rule 26 disclosures were untimely, the defendants also argue that the plaintiffs are precluded, under Local Rule 39.01, from proffering more than three expert or character witnesses without the prior approval of the trial judge. It is not entirely clear that this rule applies with equal force to experts who are also lay witnesses. Regardless, the court finds that the plaintiffs' proffered expert testimony is critical to the jury's understanding of the complex facts at issue in this case, including the jury's understanding of the plaintiffs' witnesses' own work product, which played a critical role in the adjustment of the insurance claim. The court, therefore, will not exclude this testimony pursuant to Rule 39.01, irrespective of whether the plaintiffs violated Rule 26 or the court's case management orders and/or failed to properly move the court for admission of expert testimony from more than three witnesses.

ongoing negotiations and the deadlines for other pre-trial preparations were in flux.[35]

Accordingly, the court finds that the plaintiffs' violation of the expert disclosure deadline was an honest mistake in the context of a complicated litigation, rather than an act of bad faith. Next, the court finds that the defendants are not prejudiced by the plaintiffs' delay in disclosing their expert testimony. As outlined above, the expert testimony by the plaintiffs' witnesses focuses on work product that was disclosed to the defendants not only in the course of litigation, but during the course of adjusting the insurance claim and formed the basis of the disputes between the parties, even before litigation had commenced. Moreover, all of these witnesses were listed in the plaintiffs' Initial Disclosures. The defendants are, by this time, more than sufficiently familiar with the content of these opinions. The defendants' argument that they were prejudiced by having to make their own expert disclosures without first receiving the plaintiffs' expert disclosures is disingenuous because, not only did they receive the plaintiffs' expert disclosures by letter on July 31, 2015[36] – several weeks before their own disclosures were due – but, also, all of the opinions contained therein are, again, opinions that are found in the witnesses' work

---

[35] The plaintiffs also argue that their failure to provide expert disclosures by May 29, 2015 is justified by the fact that the defendants filed summary judgment motions earlier than anticipated by the case management order. As the defendants point out, their summary judgment motions were not filed until the evening of the day the plaintiffs' expert disclosures were due to be served. Moreover, the plaintiffs not only failed to serve their disclosures on that day but also failed to request an extension of time to do so.

[36] The exception is Mr. Garrison's rebuttal opinions, which were provided to the defendants on September 16, 2015, within 30 days after the defendants' August 20, 2015 expert disclosure deadline. The defendants argue that Mr. Garrison cannot be construed as a rebuttal witness because the *plaintiffs* did not timely disclose any experts by May 29, 2015 and, therefore, there is nothing to rebut. This argument is nonsensical. Obviously, Mr. Garrison's testimony rebuts the opinions of the *defendants'* experts.

product, of which the defendants are already well aware.[37]  Also, these witnesses have either

been deposed by the defendants already or can still be deposed before the December 31, 2015

deadline.[38]

Finally, to ensure that the defendants will not be prejudiced, the court notes that the

plaintiffs will not be permitted to offer any expert testimony beyond that outlined in this

Memorandum, including – as noted above – any testimony that may come out of the depositions

that have not yet been taken.  This includes testimony by witnesses who may have been listed in

the plaintiffs' Initial Disclosures but who were not subsequently included in the July 31, 2015

letter to the defendants.  Additionally, because of the apparent confusion caused by the parties'

negotiations and the delayed filings, as well as the complicated distinction between lay and

expert testimony in this matter, the defendants will be permitted to notify the plaintiffs of any

rebuttal expert testimony they wish to offer at trial within 30 days of the issuance of this opinion.

[37] Similarly, to the extent the defendants argue that the disclosures contained in the July 31, 2015 letter were insufficient under Rule 26, the court finds that, even if the disclosures were not styled so as to provide a summary of every opinion, this is not harmful to the defendants.  As indicated above, the court construes the disclosures to indicate that these witnesses' testimony (with the exception of Mr. Garrison's rebuttal testimony) will only provide opinions contained in their work product that has already been given to the defendants, as well as whatever opinions are necessary to explain that work product – and the corresponding industry standards – to the jury.

[38] The defendants cite to several prior opinions by this court to suggest that the court should now exclude the plaintiffs' experts.  While the court is not bound by these opinions and the decision of whether to exclude testimony due to a Rule 26 violation is a discretionary one made on a case-by-case basis, the court notes that these prior opinions are anyway readily distinguishable.  In all of these cases, the court found that there was no reasonable explanation given for the deadline violations and, perhaps even more significantly, that the other party had no notice whatsoever of the nature of the proffered expert opinions prior to the missed deadline.  *See Adams v. Farbota*, 306 F.R.D. 563, 571-74 (M.D. Tenn. 2015), *Tomazin v. Lincare, Inc*., 2015 WL 4545658 at *9-12 (M.D. Tenn. July 27, 2015), *Hardison v. Wagstrom*, 2014 WL 7139997 at *6-7 (M.D. Tenn. December 12, 2014), *Campos v. MTD Prods., Inc.*, 2009 WL 2252257 at *9-11 (M.D. Tenn. July 25, 2009).

## CONCLUSION

For the foregoing reasons, the defendants' Motion to Exclude Plaintiffs' Experts/Preclude Plaintiffs From Presenting Expert Testimony At Trial (Docket No. 74) will be denied. The plaintiffs will be permitted to offer at trial the expert testimony discussed in this Memorandum only. The defendants will have 30 days to serve the plaintiffs with disclosures of any expert rebuttal testimony they wish to offer at trial.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge